UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09-cr-181 |
| | ) | COLLIER/CARTER |
| DONNA SHROPSHIRE | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant's Motion to Suppress Statement (Doc. 594) is pending before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant moves to suppress statements she made to police following the execution of a search warrant at the residence of Glenn Skiles at 1505 Hotwater Road, Soddy Daisy, Tennessee on September 15, 2009. Because I conclude adequate Miranda warnings were given and the statements of the defendant were voluntary, I RECOMMEND the motion to suppress be DENIED.

II. Relevant Facts

The undersigned held an evidentiary hearing on Defendant's motion to suppress on March 2, 2011. The government presented two witnesses: Mark Delaney, special agent for the Tennessee Bureau of Investigation and Danny Jones, a Chattanooga, Tennessee Police Officer, who at the time of the search was assigned to the DEA task force. Based on their testimony, I make the following findings: Mark Delaney has been an agent with the TBI for ten years and during that time has interviewed numerous defendants and has given Miranda warnings hundreds

1

of times. Danny Jones has been with the Chattanooga Police Department for 8 ½ years but was assigned to the DEA Task Force slightly more than a month before the search in this case.

Agent Allman was the case agent for the investigation leading to the defendant's arrest. He also prepared the search warrant affidavit for the premises to be searched at 246 County Road 467, Englewood, Tennessee.

On September 15, 2009, agents executed a search warrant at the residence of Glenn Skiles at 1505 Hotwater Road in Soddy Daisy, Tennessee. Skiles and the defendant Shropshire were located in an upstairs bedroom of the home. Skiles was questioned by agents while the defendant was handcuffed and taken to the front porch. After the search was concluded, which took most of the morning, the defendant's handcuffs were removed. At approximately 12:40 pm, Agent Mark Delaney advised defendant of her rights in the presence of Officer Danny Jones. He did not read the rights from a prepared card but did so from memory. Agent Delaney testified he orally advised the defendant of the following:

> You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you cannot afford an attorney, one will be provided for you. You have the right to answer questions and stop answering questions at any time. Do you understand your rights?

After reading defendant these rights, Agent Delaney asked if she understood the rights and she nodded that she did. Agent Delaney testified there were no guns drawn while the defendant was questioned, the interview was calm and polite and no one threatened her in any way. In particular, Agent Delaney testified that no one threatened her with jail if she did not answer and no one raised their voice or hollered at the defendant. The total time of the interview was approximately 15 minutes. Officer Danny Jones confirmed that he was present when Agent

Delaney read the Miranda rights to the defendant, that no guns were drawn, there was no yelling, no threats and he confirmed that the defendant indicated she understood her rights. He could not remember the exact words used. Both officers testified that the defendant seemed to understand, responded appropriately to all questions and at no time did the defendant seem confused and further at no time did she ask that the questioning stop.

### III. Analysis

*Defendant's Statements to Agent Delaney and Officer Jones*

Defendant argues the statements she gave to Delaney and Jones on September 15, 2009 must be suppressed because she did not knowingly and intelligently waive her Fifth Amendment rights and because those statements were not voluntary. In support of this argument, defendant contends at the time she gave her statements she was repeatedly questioned and was threatened with going to jail immediately unless she provides a statement. However, I note there is no evidence whatsoever to support this contention.

She also argues the *Miranda* warnings, if given, were not written, were not complete, and that the defendant has a limited education and therefore has great difficulty in understanding complex words and some words that are not complex. She also argues the statements were not voluntary (Defendant's Motion, Doc. 594 at pp 1-3). The government agrees that at the time statements were given, the defendant was in custody. Statements made by a suspect while in custody must be preceded by *Miranda* warnings in order for those statements to be admissible. *United States v. Crowder*, 62 F.3d 782, 785 (6th Cir. 1995). The question here is whether the warnings as given comply with *Miranda*. This case is a perfect example of why it is a better procedure for police officers to read *Miranda* rights from a preprinted card. Here the defendant

argues she was not specifically told she had a right to an attorney before questioning began or to have an attorney present during questioning (Doc. 1041, Defendant's Memorandum in Support of Motion to Suppress, page 3). In support of this position, defendant points to *United States v. Tillman*, 963 F. 2d 137 (1992). The *Tillman* court referred to a prior opinion of the United States Supreme Court, *Duckworth v. Eagan,* 492 U.S. 195 (1988). In *Duckworth*, the Court of Appeals had reversed the trial court and found advice that counsel will be appointed "if and when you go to court" was constitutionally defective because it denied the indigent accused a clear and unequivocal warning of the right to appoint counsel before interrogation and linked that right to a future event. The Supreme Court in *Duckworth* recognized *Miranda* warnings need not be given in the exact form described in *Miranda* but simply must reasonably convey to a suspect his rights. The initial warnings given to *Duckworth* were he had a right to remain silent, anything he said could be used against him in court, he had the right to speak to an attorney before and during questioning even if he could not afford to hire one, he had the right to stop answering questions at any time until he talked to a lawyer, and the police could not provide him with a lawyer but one would be appointed "if and when you go to court." The view of the majority in *Duckworth* was that this touched all of the bases required by *Miranda*. (Id. at 195). In *Tillman*, the Court faced a much more troublesome issue because defendant was never told any statements he made could be used against him. The court noted that of all the elements provided for in *Miranda*, this element was perhaps the most critical. The court reiterated there was no mandate that "magic words" be used but there is a requirement that all elements of *Miranda* be conveyed. They held it was not so conveyed in the absence of the warning his statements could be used against him.

When one looks at the *Miranda* holding itself, one can see that the Court there uses somewhat different language. The Court in *Miranda* holds:

> "Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system of protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation"

*Miranda v. Arizona*, 384 U.S. 436, 471 (1966).

> However, later in the opinion the Court notes:

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardised. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

*Miranda*, at 478, 479.

The *Miranda* warning in this case does not match entirely the specific words in the decision. However, I conclude all of the rights were spelled out. The one missing element is the failure to specifically say there was a right to have an attorney before, during, and after the questioning. However, the advice given did not limit the right to an attorney in any way. Here there is no reference whatsoever to restricting the right to the attorney to the future, when she is in court. I conclude it is a reasonable construction to say when one is advised of the right to have an attorney, immediately following the warning you have a right to remain silent and anything

you say can and will be used against you in a court of law, means you have the right to that attorney then. Unlike other cases where the warnings were found inadequate, there is no reference to the attorney right being one held only in the future.

*Voluntariness of the Statements*

I will next address the voluntariness of the statements. A defendant's waiver of his *Miranda* rights must be voluntary, knowing, and intelligent. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Miggins,* 302 F.3d 384, 397 (6th Cir. 2002). A determination of the voluntariness of a defendant's confession is viewed under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009). The government bears the burden of proof to show by a preponderance of the evidence through clear and positive testimony that a defendant voluntarily waived his *Miranda* rights. *Canipe*, 569 F.3d at 602 (citing *United v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999)); *see also Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

The inquiry as to whether there was a valid waiver has two dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Crowder*, 62 F.3d at 787.

In determining whether a confession has been elicited by means that are unconstitutional, this Court must consider "whether a defendant's will was overborne in a particular case." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir.1994). Factors to consider in assessing the

totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep. *Id.*

In this case the only testimony comes from the two officers. I found their testimony to be credible. Although there was not a written form from which the *Miranda* rights were read, I conclude from Agent Delaney's testimony that the defendant was read her *Miranda* rights. Both Agent Delaney and Officer Jones were clear in their recollection that defendant acknowledged she understood her rights. At the time of the interview, guns were not drawn, voices were not raised, threats were not made. The interview was described by Agent Delaney as calm and polite and Shropshire appeared to be able to respond to all of Agent Delaney's questions. At no time did she attempt to withdraw her consent to be questioned and at no time did she appear confused. The defendant reported in her pretrial report that she dropped out of school in the 9th grade, did not have a GED, but she reported no difficulties with reading or writing. She reported working several jobs and had some limited experience with law enforcement, having gone through a guilty plea resulting in a sentence of conditional diversion which was deferred to probation.

I conclude the government has shown by a preponderance of the evidence through clear and positive testimony that the defendant voluntarily and intelligently waived her *Miranda* rights. There was no intimidation, coercion, or deception. In assessing the totality of the circumstances we look to the age, education, and intelligence of the accused; whether the accused has been informed of her constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or

sleep. Here the defendant arguably has a limited education but she appeared to understand the warnings given orally by Agent Delaney. She was informed of her right to remain silent, the questioning lasted about 15 minutes, which is certainly not prolonged, and the questioning was calm and polite and in no way threatening; there was no physical punishment or deprivation of food or sleep. In short, I see no police conduct to cause me to question the voluntariness of the waiver and the police did nothing to indicate the defendant's will was overborne in this case.

### IV. Conclusion

I find the defendant voluntarily and intelligently waived her *Miranda* rights before law enforcement began questioning her and that the statements she made were voluntary. Consequently, I RECOMMEND the defendant's Motion to Suppress Statements (Doc. 594) be DENIED.[1]

                                                              s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).